# W. A. MADARIS v. T. B. EDWARDS, HETTIE MADARIS, AND THE LYNDON SAVINGS BANK.

1. MORTGAGE LIEN, *Superior to Mechanics' Lien*. B. procured a mechanics' lien on the real property of D., and commenced an action against D. to enforce the same. Afterward M. became the owner, by purchase of the mechanics' lien, of B.'s interest in the action to enforce the same, and of the property of D. upon which the mechanis' lien existed, and then mortgaged the property to D. to secure a negotiable promissory note given by M. to D., and D. immediately and before the maturity of the note transferred the same by indorsement to E. *Held*, That the mortgage lien, procured by E., was prior and superior to the mechanics' lien or any other right, title, interest or claim still remaining in M.

2. MORTGAGE LIEN, *Prior to Mechanics' Lien*. And in such case M. filed a written assignment of the mechanics' lien in the action brought by B. against D. to enforce the same, and was himself substituted as the plaintiff in the place of B., and prosecuted the action in his own name to judgment, and in pursuance of such judgment the property was sold

at sheriff's sale to L., and L. conveyed the property by quitclaim deed to M. These matters were all of record. *Held,* That the mortgage lien owned by E. continued to be prior and superior to any right, title, interest or claim procured by virtue of the mechanics' lien.

3. MORTGAGOR, *to Protect Mortgagee's Rights; Estoppel; Extent of Mortgage Lien.* It is the duty of the mortgagor to protect the rights and interests of his mortgagee, and not to attempt to overthrow or destroy them; and hence M., the mortgagor who mortgaged the entire property, but now desires to defeat the mortgage lien, is estopped from denying that he voluntarily lost the title to the property which he had at the time when he executed the mortgage, or from claiming that he afterward procured some new and independent title not covered by the mortgage. And *further held,* that the mortgage will be considered as covering all that it did in fact cover when the same was executed, and all that the parties believed or intended that it should cover.

### *Error from Osage District Court.*

ACTION brought by *Edwards* against *Madaris* and wife and *The Lyndon Savings Bank,* on two negotiable promissory notes, and to foreclose, as against all the defendants, a mortgage given to secure their payment. Trial by the court, at the October Term, 1883, and judgment for plaintiff. The defendant *Madaris* brings the case here. The material facts are stated in the opinion.

*Peyton, Sanders & Peyton,* for plaintiff in error.

*Ellis Lewis,* and *Scott & Lynn,* for defendant in error Edwards.

The opinion of the court was delivered by

VALENTINE, J: On September 20, 1881, Ward Bradford made a contract with J. S. Danford to erect a building for Danford on lot No. 1, block 28, in Lyndon, Osage county, Kansas. On December 15, 1881, Bradford filed in the office of the clerk of the district court of said county a statement for a mechanics' lien on said property, for the sum of $1,195, claimed to be due him for the erection of the building. On February 25, 1882, Bradford commenced an action in the district court of said county against Danford and one A. B. Cooper, to foreclose the mechanics' lien. On March 3, 1882,

Bradford sold and assigned to Madaris by an instrument in writing all his (Bradford's) "right, title, interest and benefit" in and to the mechanics' lien and in and to said action. On March 4, 1882, Madaris and wife executed to Danford a mortgage on said property, to secure two negotiable promissory notes which had previously been executed by Madaris to Danford, one of which notes was dated February 8, 1882, for $1,215, and was due eight months after the date thereof, and the other was dated February 25, 1882, for $220, and was due in eight months after its date.    The mortgage was filed for record on the same day on which it was executed, and on the same day Danford assigned the notes by indorsement to T. B. Edwards.    On March 8, 1882, the assignment by Bradford to Madaris of Bradford's interest in said mechanics' lien and in said action was filed in the district court and in said. action. On April 7, 1882, Madaris by order of the court was substituted as the plaintiff in said action in the place of Bradford, and judgment was rendered in favor of Madaris against both Danford and Cooper, for $1,195, on the claim for the erection of the building; and the mechanics' lien was foreclosed, and the lot ordered to be sold to satisfy the money judgment.    On May 22, 1882, an order of sale was issued on said judgment, and in pursuance thereof the sheriff, on July 1, 1882, sold the property to the Lyndon Savings Bank for $825.    On July 6, 1882, the sale was confirmed, and on July 7, 1882, the sheriff executed a deed for the property to the Lyndon Savings Bank. On October 23, 1882, the Lyndon Savings Bank, by its president O. C. Williams, and its secretary W. A. Madaris, executed a quitclaim deed for the property to the said W. A. Madaris.

On December 28, 1882, Edwards commenced this present action in the district court of Osage county, against the said W. A. Madaris and wife and the Lyndon Savings Bank, to recover a judgment against Madaris on said notes, and to foreclose the mortgage as against all the defendants.    On January 20, 1883, the sheriff's deed to the Lyndon Savings Bank and the quitclaim deed from the Lyndon Savings Bank to

Madaris were filed in the office of the register of deeds for record. On October 13, 1883, this present case was tried before the court without a jury, and on the trial the foregoing facts were proved by the defendant, Madaris, and the evidence of these facts constituted the entire and only evidence introduced in the case. The execution, however, of the promissory notes and the mortgage, and their transfer to the plaintiff, Edwards, as above stated, had previously been admitted by the pleadings. At the close of the evidence the plaintiff, Edwards, demurred thereto, upon the ground that it wholly failed to prove any defense to the plaintiff's cause of action, and the court sustained the demurrer, and rendered judgment in favor of the plaintiff and against the defendant, W. A. Madaris, for the amount of the two promissory notes, to wit, $1,725.26; and against all the defendants, foreclosing the mortgage, decreeing it to be a lien on the mortgaged property, and ordering that the mortgaged property be sold to satisfy the said money judgment; to which judgment the defendant, W. A. Madaris, excepted, and filed a motion for a new trial, upon various grounds; which motion the court overruled, and the defendant, W. A. Madaris, again excepted. The defendant, W. A. Madaris, as plaintiff in error, now brings the case to this court, making all the other parties in the case defendants in error. He asks for a reversal of all that portion of the said judgment of the court below which decreed that the mortgage was a lien upon the mortgaged property, and which ordered that the mortgaged property should be sold to satisfy the money judgment. He does not ask that the personal judgment rendered against him for the amount of the promissory notes shall be disturbed.

It will be seen that the whole controversy in this case is between the plaintiff, T. B. Edwards, and the defendant, W. A. Madaris, and that the sole question involved in the case is whether the mortgage executed by Madaris and wife to Danford and assigned by Danford to the plaintiff Edwards was a lien upon the mortgaged property at the time when the judgment declaring it to be a lien was rendered in this case, or

whether the lien of such mortgage had been totally abrogated, annulled and destroyed by the proceedings had in the action to foreclose the mechanics' lien. That Edwards was bound to take notice of the mechanics' lien and of the action pending to enforce the same at the time when the mortgage was executed and when it was assigned to him, there can be no doubt, for all these things are matters of public record, of which all persons are bound to take notice; but because he was bound to take notice of the mechanics' lien and of the action thereon, will that, with the subsequent proceedings to enforce the mechanic's lien, extinguish and destroy his mortgage lien? There is no direct evidence tending to show that Danford ever owned the mortgaged property; and if he never owned the same, then no valid mechanics' lien could ever be obtained thereon under the other facts of this case. For the purposes of the case, however, and upon the pleadings and the indirect evidence, we shall assume that Danford did own the property at the time when he made the contract with Bradford for the erection of the building on said property and at the time when the mechanics' lien was filed, and therefore that the mechanics' lien was valid at that time. But still it must be presumed that afterward, and on March 4, 1882, when Madaris and wife executed the mortgage to Danford, Madaris or Madaris and wife owned the property, (*Ayres v. Probasco,* 14 Kas. 177, 197, 198;) for it cannot be presumed in favor of Madaris, who pretended to own the property at that time and mortgaged it, and against the subsequent innocent holder of the mortgage, that Madaris did not own the property. Madaris probably purchased the property from Danford, and gave this mortgage to secure the purchase-money or a part thereof, and possibly some other debt or debts. At the time when Madaris and wife executed the mortgage, Madaris owned said mechanics' lien, and all of Bradford's interest therein and in the suit which had been commenced by Bradford against Danford to enforce such mechanics' lien, for the same had been assigned to Madaris on March 3, 1882; and of necessity when Madaris and wife executed the mortgage to Danford they gave

to him a lien upon all their right, title, interest and claim in and to the mortgaged property; for they made no exceptions or reservations in the mortgage or elsewhere so far as is shown, but in terms mortgaged all; and such lien must be held to be paramount, prior and superior to all right, title, interest or claim which they or either of them might have had in the mortgaged property at the time when they executed the mortgage; or in other words, and to be more explicit, the mortgage lien must be held to be prior to the mechanics' lien, the mortgage lien having been created and given by the owner and holder of the mechanics' lien. Therefore, when Danford obtained the mortgage from Madaris and wife, and transferred the same to Edwards, Danford obtained and transferred a lien prior to the mechanics' lien.

And it may even be questioned whether the mechanics' lien really had any existence after it was transferred by Bradford, the original owner thereof, to Madaris, the then owner of the property upon which the lien existed. Generally when the owner of land pays off an incumbrance or secures to himself a debt or claim against the land which is an incumbrance, he simply redeems his land from the incumbrance, discharges the incumbrance and destroys the same. But even if the mechanics' lien had any existence after Madaris purchased it from Bradford, still it must be held to be subsequent and inferior to the mortgage lien created by Madaris, the owner and holder of the mechanics' lien after he had so purchased it. On March 8, as before stated, Madaris filed in the district court and in said action his assignment of Bradford's interest in the mechanics' lien and in said action, and was himself substituted as the plaintiff in the action; and the action was thereafter prosecuted and conducted by and in the name of W. A. Madaris, as the plaintiff, and the action was no longer prosecuted or conducted by or in the name of Ward Bradford, as plaintiff; and of course any judgment rendered in favor of Madaris in such action could not create a lien prior or superior to the mortgage lien held by Edwards, who was not a party to the action, but whose interests were in fact represented by

19 — 32 KAS.

Madaris, his mortgagor; and whatever Madaris, the mortgagor, and plaintiff, obtained in such action, would in fact inure to the benefit of Edwards, the holder of the mortgage. Madaris and Edwards sustained the relation toward each other of mortgagor and mortgagee; and it was the duty of Madaris, as mortgagor, to protect the rights and interests of his mortgagee, and not to attempt to overthrow and destroy them. (*Clark v. Baker*, 14 Cal. 613, 632, *et seq.*) And Madaris could not obtain rights by virtue of judicial proceedings in an action in which Edwards was not a party, which would in any degree impair the rights of Edwards.

Madaris, however, is now claiming under and through the Lyndon Savings Bank. It appears that at the time of the sheriff's sale the property was not purchased in the name of Madaris, but was purchased in the name of the Lyndon Savings Bank. But we do not think that such fact can make any difference. The Lyndon Savings Bank, under the circumstances of this case, could not be such an innocent purchaser as to obtain rights prior and superior to those of Edwards under his mortgage. The mortgage was on record at the time, and the Lyndon Savings Bank as well as all others was bound to take notice thereof, and was bound to take notice from the record of the mortgage, and the records of the district court in this action, that the mortgage was executed by the person who was at the time of its execution the owner and holder of the mechanics' lien; and therefore the Bank was bound to take notice that the lien of the mortgage was prior and superior to the mechanics' lien, and prior and superior to the lien of any judgment rendered thereon in favor of the holder thereof, who was also the maker of the mortgage. Both the Lyndon Savings Bank and Edwards would in such a case claim under Madaris, and the records of the county showed precisely who had the prior and superior right. Probably, however, the Lyndon Savings Bank was not in any sense an innocent purchaser, for probably it knew, through its secretary, W. A. Madaris, all about the transactions which he had previously had in connection with the mortgage and the mechan-

ics' lien and the action to enforce the mechanics' lien; but, for the purposes of this case, we shall assume that the Lyndon Savings Bank would have been an innocent purchaser, except for the notice which it was bound to take from the public records. But even supposing that the Lyndon Savings Bank was absolutely an innocent purchaser, and that it obtained a good title to the property, still it transferred all its right, title and interest to Madaris, and the controversy is now not between Edwards and the Lyndon Savings Bank, but is between Edwards and Madaris; and considering the obligation resting upon Madaris to protect the rights and interests of his mortgagee, we think he is estopped from denying that the mortgage is a lien on his property to the extent of the title which he had or claimed to have when he mortgaged his property to Danford. This is entirely in accordance with the case of *Clark v. Baker*, heretofore cited, and it is not in any manner in conflict with the cases of *Power v. Lester*, 23 N. Y. 527, 532, and *Brown v. Phillips*, 40 Mich. 265, 270. When Madaris mortgaged his property, he pretended to have the entire title; and we think that he should now be estopped from denying that he at that time did not have the same, or for the purpose of defeating the mortgage lien, that he at any time afterward voluntarily lost the same, or that he procured some new and independent title which the mortgage does not cover.

We think, under the circumstances, that the mortgage should be considered as covering all that it did in fact cover when it was executed, and all that the parties believed or intended that it should cover.

The judgment of the court below will be affirmed.

All the Justices concurring.